**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Fadhel Algatrani,** | ) | **CASE NO. 1:12 CV 1617** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Prestolite Perforance LLC,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion to Dismiss or Stay Proceedings and to Compel Arbitration (Doc. 7). For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Fadhel Algatrani filed this Complaint against defendant Prestolite Performance LLC alleging employment discrimination arising out of his termination from employment. The Complaint generally alleges the following. Plaintiff is a Muslim and an Arab American of Iraqi origin. He commenced his employment with "Mr. Gasket" in June 2006. The latter was acquired by defendant in 2007. Plaintiff was employed as a packer in

1

the Box Packaging Department of defendant's warehouse.  His immediate supervisor was Scott Murphy.  Beginning in May 2007, plaintiff was subjected to intimidation, verbal and physical abuse, harassment, and discrimination on the basis of his religion, race, and national origin. Plaintiff was terminated from his employment in October 2010. The Complaint sets forth nine claims under state and federal statutes asserting hostile work environment and disparate treatment on the basis of race, religion, and national origin, and retaliation for reporting this discrimination.

Defendant submits the declaration of Alice Bissett, its Human Resources Director, which incorporates the Prestolite Application for Employment (the employment application) completed and signed by plaintiff on July 23, 2007.  The application contains the following language:

> 4. I further recognize that if employed by the Company, I agree, in partial consideration of my employment, to file a demand for arbitration to resolve any disputes arising from my employment, as required under Paragraph 8 below**. I agree to file such demand within six (6) months after the claim arises or within the applicable statutory limitations period(s) provided by law, whichever occurs first.**
>
>
> 8. **ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH ANY ASPECT OF MY EMPLOYMENT OR ANY TERMINATION THEREOF (INCLUDING BY WAY OF EXAMPLE BUT NOT LIMITATION, DISPUTES CONCERNING ALLEGED CIVIL RIGHTS VIOLATIONS, EMPLOYMENT DISCRIMINATION OF ANY KIND INCLUDING ON THE BASIS OF ANY PROTECTED CATEGORY UNDER FEDERAL OR STATE LAW, RETALIATION, WRONGFUL DISCHARGE, ENTITLEMENT TO OVERTIME PAY, SEXUAL HARASSMENT, BREACH OF EXPRESS OR IMPLIED CONTRACT OR TORT), SHALL BE EXCLUSIVELY SUBJECT TO FINAL AND BINDING ARBITRATION** before an impartial arbitrator, in accordance with the principles of fundamental fairness, and providing all substantive rights and remedies, including any applicable damages provided under any pertinent statute(s) related to such claims, the right to representation by counsel, a reasonable opportunity for

>discovery, a fair arbitral hearing, a written arbitral award containing findings of facts and conclusions of law, and any other provision required by law. Any decision of the Arbitrator shall be final and binding as to both parties, and enforceable by any court of competent jurisdiction. Nothing contained herein shall prohibit me from filing any claims or charges with any appropriate governmental agency. **I UNDERSTAND THAT MY AGREEMENT HEREIN CONSTITUTES A WAIVER OF MY RIGHT TO ADJUDICATE CLAIMS AGAINST THE COMPANY IN COURT, AND THAT I AM OPTING INSTEAD TO ARBITRATE ANY SUCH CLAIMS.**

(Doc. 8) (emphasis in original).

Plaintiff submits his declaration which states in pertinent part. Plaintiff immigrated to the United States in 1993 with no knowledge of the English language. By 2006, he had developed very basic skills in conversational English. Plaintiff could not comprehend and read material in English, and relied on his supervisor, Scott Murphy, for assistance in that regard. Plaintiff would go to Murphy more than a couple times each week to seek his help in comprehending and understanding the writing on the labels so that he could put them on the correct package. He also sought Murphy's assistance in comprehending his personal tax and insurance documents. When plaintiff was approached in 2007 by Murphy to sign the employment application, he could not read the document and asked Murphy to explain it. Murphy told plaintiff that he had to just fill out and sign the document because of the change in ownership. Murphy told plaintiff how to fill out each section and where to sign. Plaintiff noticed the information written on the document above where his signature was required, the paragraphs relating to arbitration. Because he could not read or comprehend it, he asked Murphy. Murphy told plaintiff, "don't worry about it, you are fine as you have put down the information I asked you to." Murphy did not explain or mention anything about arbitration. Plaintiff then gave the signed document to Murphy and was not given a copy. Plaintiff never

made an arbitration demand, but filed a Charge of Discrimination with the EEOC on August 10, 2011. (pltf. decl.)

In reply, defendant submits Scott Murphy's declaration wherein he states the following. He supervised plaintiff at all times during his employment. In plaintiff's position as a packer, he was primarily responsible for completing work orders by boxing and shipping parts for the automotive aftermarket industry. At the beginning of each work day, plaintiff would be given work orders to complete. He was responsible for reading the work order, pulling and packing the appropriate number of parts, and completing several forms. The work order, product labels, and forms were all in English. Murphy incorporates copies of the following. He offers work orders completed by plaintiff. Murphy also submits a sample "Departmental Finished Production Transfer" form that plaintiff was required to complete as he completed each work order. This form required plaintiff to input the part number, work order number and quantity, and select a unit of measure (pieces, pounds, feet, or sets). Next, Murphy submits a sample "Labor Reporting Ticket" which plaintiff was required to turn in at the end of each day and which recorded the work orders completed by him. Plaintiff was required to input information such as department number, labor code, part number, order number, operation sequence, machine & work center, good pieces, bad pieces, and the time it took to complete the order. Finally, Murphy submits a print-out from defendant's computer system which contains all of the information entered into the system from the Labor Reporting Tickets completed by plaintiff during his employment with defendant. As a packer, an integral part of plaintiff's job was to read and comprehend work orders and enter information on the Departmental Finished Production Transfer and Labor Reporting Ticket

forms, which was all done in English. Before becoming a permanent employee, plaintiff had been placed as a temporary employee. If he had been unable to read, write, and understand English, he would not have been hired as a permanent employee as it would have been impossible to perform the position without such ability. Murphy did not assist plaintiff with reading, writing, or comprehending English so that he could do his job and, as far as he knew, plaintiff had no difficulty reading the work orders and completing the appropriate paperwork on his own and never asked for help. When the company was sold, all employees, including Murphy, had to complete the employment application which was distributed by Diane Caldwell, the Human Resources Generalist. Murphy was not responsible for distributing the applications, and did not assist plaintiff in completing his. (Murphy decl.; Exs)

Defendant submits Caldwell's declaration wherein she states that she gave plaintiff, and all employees, the employment application and plaintiff did not ask her for help even though she had told the employees to see her if they needed assistance. Plaintiff completed the application and returned it to Caldwell. Several non-native English speaking employees, whose jobs did not require the regular ability to read, write, and understand English, did come to Caldwell with questions. (Caldwell decl.)

Plaintiff's completed employment application states in part, "What foreign languages do you speak, read and/or write?" Plaintiff responded that he was fluent in "English-Arabic" as to all three.

This matter is now before the Court upon defendant's Motion to Dismiss or Stay Proceedings and to Compel Arbitration.

**Discussion**

Defendant asserts that the plain language of the employment application and the law require dismissal of the Complaint and an order compelling arbitration of the claims. Alternatively, defendant contends that all proceedings should be stayed and arbitration compelled.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the FAA), establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Supreme Court has stated that courts must "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Furthermore, any ambiguity in the parties' contract or doubts about the parties' intentions should be resolved in favor of arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  "A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Financial Corp-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

"The Sixth Circuit applies a four-pronged test to determine whether to grant motions to dismiss or stay the proceedings and compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stachurski v. DirecTV, Inc.,* 642 F.Supp.2d 758 (N.D.Ohio 2009) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000)). Defendant contends that all four prongs are satisfied.

Plaintiff argues that the arbitration agreement is unconscionable and, therefore, cannot be enforced. Additionally, plaintiff contends that the arbitration clause was induced by fraud.

Plaintiff relies on *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir. 2003), which acknowledged, in the context of an arbitration agreement relative to employment,

> Under Ohio law, the unconscionability doctrine has two components:
>
> (1) substantive unconscionability, i.e., unfair and unreasonable contract terms, and (2) procedural unconscionability, i.e., individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible. Both elements must be present to find a contract unconscionable.

*Id.* (citations omitted). Plaintiff asserts that the arbitration clause at issue is both procedurally and substantively unconscionable. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Crouse v. LaGrange Junction Ltd.,* 973 N.E.2d 822 (Ohio App. 9th Dist. June 29, 2012) (citations omitted). *See also Tolbert v. Coast to Coast Dealer Services, Inc.,* 789 F.Supp.2d 811 (N.D.Ohio 2011) ("To demonstrate that an arbitration clause is unenforceable, the party asserting unconscionability must prove that the clause is both substantively and procedurally unconscionable under Ohio law.")

"Procedural unconscionability refers to the individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Id.* (citations and internal quotations omitted). *Morrison* recognized that in determining procedural unconscionability under Ohio law, this Court considers

> factors bearing on the relative bargaining position of the contracting parties, including

>their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible. The crucial question is whether each party to the contract, considering his obvious education or lack of it, had a reasonable opportunity to understand the terms of the contract, or [whether] the important terms [were] hidden in a maze of fine print.

*Id.* at 666 (internal quotations and citations omitted).

"A contract is substantively unconscionable when its terms unreasonably favor one party over another." *Gilchrist v. Inpatient Medical Services, Inc.,* 2010 WL 3326742 (N.D.Ohio Aug. 23, 2010) (citing *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834  (2d Dist.1993).)  "No set of general factors governs commercial unreasonableness; instead, considerations vary case by case."  *Id.* (citing *Dorsey v. Contemporary Obstetrics & Gynecology*, Inc., 113 Ohio App.3d 75, 80 (2d Dist.1996)). *See also Tolbert, supra,* ("Substantive unconscionability refers to the contract terms and whether or not they are commercially reasonable.")

Plaintiff asserts that the following factors are evidence of procedural unconscionability.  Plaintiff is an immigrant from Iraq with minimal English skills.  He could not read material written in the English language which was well-known to defendant and, particularly, his supervisor Murphy. Plaintiff asked Murphy what the document was and Murphy told him that he had to fill out the document because of the change in the ownership of the company. Murphy gave plaintiff detailed instructions on how to fill out the biographical information and work experience history, and showed plaintiff where to sign the application.  When plaintiff asked  Murphy about the information contained in the paragraphs above his signature, Murphy did not disclose the fact that plaintiff was signing on an application with two arbitration provisions. In fact, Murphy told plaintiff not to worry about

8

it, and that he was fine since he put down the information Murphy had asked him to.

With regard to substantive unconscionability, plaintiff raises several issues. Plaintiff points out that the agreement is silent as to the cost of arbitration and he would, therefore, have to conduct discovery on this issue. Plaintiff also contends that the agreement is silent as to most damages, the type of arbitration to be conducted, the choice of arbitrator, the opportunity for discovery, and the details as to the hearing. Plaintiff asserts that he should be afforded discovery to fully determine the substantive unconscionability of the arbitration agreement.

Finally, plaintiff asserts that the arbitration clause was induced by fraud given Murphy's false representations and concealment of material facts.[1]

Defendant argues that plaintiff's assertions are not persuasive and the arbitration agreement is valid and enforceable. For the following reasons, this Court agrees.

As discussed above, plaintiff must establish both substantive and procedural unconscionability.

With regard to the procedural prong, plaintiff largely relies on his assertion that he did not understand English, a fact that was known to Murphy who failed to explain the clause when asked. Plaintiff, however, does not demonstrate that not understanding the language is a basis for avoiding an arbitration agreement. Rather, as defendant points out, courts have not found it to be so. The Third Circuit has rejected an employee's assertion that he should not be bound by an arbitration clause because he was ignorant of the language in which the

---

[1] Plaintiff also points out that because he did not file a timely arbitration demand, he will be left without a legal recourse for his claims if this Court dismisses the action.

9

agreement was written: "In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." *Morales v. Sun Contractors, Inc.,* 541 F.3d 218 (3d Cir. 2008). The Sixth Circuit has also refused to find an employment arbitration agreement unenforceable on the basis that the employee "did not understand English as well as other employees."*Mazera v. Varsity Ford Management Services,* 565 F.3d 997 (6th Cir. 2009) (Plaintiff's asserted "lack of bargaining power, the absence of an attorney, language problems, and his degree of understanding... [are immaterial] with respect to the validity of the arbitration agreement.") Moreover, plaintiff's averment that he did not understand English appears to be self-serving given defendant's evidence that plaintiff was required to read and understand English to perform his job. Additionally, plaintiff stated on his employment application that he could fluently speak, write, and read English.

Defendant also points out that Ohio courts recognize that "where a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable." *Short v. Resource Title Agency, Inc.,* 2011 WL 1203906 (Ohio App. 8th Dist. March 31, 2011) (citations omitted). Here, there is no evidence that plaintiff could not have looked elsewhere for employment, or was forced to consent to the arbitration agreement.

Plaintiff avers that Murphy did not give him "an opportunity to review the document, or to take the document home, or to have somebody else read it to me so I could understand it, or to consult an attorney." (pltf. decl.) But, there is no evidence that plaintiff was hurried into signing it. Rather, defendant presents evidence that it was the Human Resources

10

Generalist who gave plaintiff the employment application, along with all the other employees, and that she informed everyone to seek her assistance if there were questions.

For these reasons plaintiff fails to show procedural unconscionability and the Court's inquiry may end there.  Even assuming plaintiff has demonstrated procedural unconscionability, he must still demonstrate that the arbitration agreement was substantively unconscionable.  He cannot do so. As set forth above, this prong asks whether the contract terms are unfair and unreasonable.

Plaintiff asserts that the language in the agreement stating that "providing all substantive rights and remedies, including any applicable damages provided under any pertinent statute(s) related to such claims" means that it excludes the possibility of being awarded attorney's fees, and that Ohio courts have found arbitration agreements surrendering the right to attorney's fees to be substantively unconscionable.  However, as defendant points out, this provision actually reserves remedies including damages provided by statute.  As plaintiff himself recognizes, Title VII and the Ohio Revised Code provide for attorney's fees.  Therefore, under the agreement, attorney's fees that are recoverable under those statutes are recoverable at arbitration.

Plaintiff also asserts that the agreement is silent as to cost, type of arbitration, choice of arbitrator, discovery, and hearing.  But, the Federal Arbitration Act specifically provides a mechanism for parties to select an arbitrator when the agreement is silent (9 U.S.C. § 5), and plaintiff fails to demonstrate that an agreement's failure to specify a forum renders it unconscionable.  As defendant points out, the American Arbitration Association is a common forum for resolving workplace disputes and includes a reasonable filing fee.

Plaintiff states that he needs to conduct discovery on how defendant plans on apportioning the cost of arbitration, and that he has no knowledge of the potential costs.  But, plaintiff fails to show any legal support for his position that this silence as to costs would make the agreement unconscionable.  Plaintiff cites solely to this Court's decision in *Porter v. MC Equities, LLC,* 2012 WL 3778973 (N.D.Ohio Aug. 30, 2012).  The arbitration clause in that case, however, specified a forum and there was evidence that the fees involved in that forum were disproportionate to litigating in court.

Finally, plaintiff argues that the arbitration agreement was induced by fraud. Plaintiff avers that Murphy just told him to fill out the application and when asked about the arbitration provision, Murphy told him not to worry about it.  These do not amount to fraudulent representations or concealment.  Regardless, plaintiff avers that he "relied solely on Mr. Murphy to understand what was contained in the document as I could not read or understand it on my own."  But, courts uniformly hold that "when one is ignorant of the language in which a document is written, or who is illiterate, executes a writing proposed as a contract" the person is bound.  *See GBF Engineering, Inc. v. John,* E.D.Mich. Aug. 25, 2010) ("In the absence of fraud, one who signs a written agreement is bound by its terms whether or not he or she can read.")

For these reasons, plaintiff has not demonstrated unconscionability or fraud to avoid the arbitration agreement. [2]

**Conclusion**

---

[2]  Plaintiff's request for a jury trial on the defenses of fraud and unconscionability is denied for the reasons stated by defendant.

12

For the foregoing reasons, defendant's Motion to Dismiss or Stay Proceedings and to Compel Arbitration is granted.

IT IS SO ORDERED.


                                        /s/Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Date:  12/17/12               United States District Judge